**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY STARLING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NEXLEVEL DIRECT LLC, KARNS & KARNS LLP, AND ACCIDENT LLC<br><br>Defendants. | Case No.<br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Kimberly Starling ("Ms. Starling"), by her undersigned counsel, for this class action complaint against Defendants NexLevel Direct LLC, Karns & Karns LLP, and Accident LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.     PARTIES

5. Plaintiff Starling is an individual who resides in the Northern District of Texas.

6. Defendant NexLevel Direct LLC is a Illinois marketing company that has its places of business in Lake Forest, Illinois, Des Moines, Iowa, and Minneapolis, Minnesota.

7. Defendant Karns & Karns LLP is a Texas law firm with offices in Texas and Nevada.

8. Defendant Accident LLC, doing business as Accident.com, is a New York corporation that specializes in attorney marketing and referrals.

## III.     JURISDICTION AND VENUE

9. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violation of the Texas Business and Commerce Code relates to the same telemarketing campaign as the TCPA claim.

10. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has general personal jurisdiction over Defendant NexLevel Direct LLC as an Illinois corporation. The Court has specific personal jurisdiction over Defendants Karns & Karns LLP and Accident LLC as they both contracted with NexLevel to place the illegal telemarketing calls nationwide.

11. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred and was orchestrated from in this District.

## IV. FACTS

**A. The Enactment of the TCPA and its Regulations**

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B. The Texas Business and Commerce Code**

17. Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," which includes "a service" to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

18. The burden of proof lies on a defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id*. § 302.051.

19. Legal services are "items" for which there is no exemption to the Code. *Id*. § 302.051.

20. None of the Defendants are registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying Defendants as either a DBA or seller name returns no results)

### C. Unsolicited Telemarketing to Plaintiff

21. Plaintiff Starling is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff's residential telephone number is (817)-689-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

23. Ms. Starling uses the number for personal, residential, and household reasons.

24. Plaintiff Starling never consented to receive calls from Defendants.

25. Plaintiff Starling never did business with any of the Defendants.

26. Despite this, Plaintiff received a total of 19 automated calls from Defendants as part of a telemarketing campaign, between September 11, 2023 and September 20, 2023. The calls were all sent from the identical caller ID 848-316-0591.

27. The calls were unwanted, so Plaintiff did not answer several of the calls.

28. Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified the number that called as robocallers. *See* https://www.nomorobo.com/lookup/848-316-0591.

29. In fact, this is not the first time that NexLevel Direct has been sued for its telemarketing conduct. On the contrary, NexLevel has been sued in two class actions alleging nearly identical TCPA violations as here.

30. During the call on September 13, 2023, the caller wanted to sell the Defendants' services for personal injury representation in a car accident to the Plaintiff. The Plaintiff said she was not interested and not to call back.

31. Despite stating that she did not want to be contacted, and despite never having requested the calls before in the first place, Plaintiff received 5 more calls.

32. On yet another call on September 14, 2023 at 3:11 PM, the Plaintiff reiterated her request that Defendants not call her.

33. Not six minutes later, Defendants called Plaintiff again at a different telephone number the Plaintiff provided on the 3:11 PM phone call at 3:17 PM. This time, the Plaintiff provided information to identify the caller and was transferred to an intake representative for Accident.com and ultimately received a retainer agreement from Karns & Karns. Plaintiff does not allege this call was violative at this time.

34. Plaintiff continued to receive calls. During one call that same day, at 4:22 PM, the Plaintiff reiterated her request that Defendants not contact her. Despite this, Plaintiff received a total of five more calls from the same caller ID until the calls ultimately ceased on September 20, 2023.

35. The calls offered personal injury representation from Karns & Karns.

36. None of the aforementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

37. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

38. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

39. The FCC has instructed that sellers such as Karns & Karns may not avoid liability by outsourcing telemarketing to third parties, such as NexLevel and Accident:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

40. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

41. Karns & Karns is liable for telemarketing calls placed by NexLevel and transferred to Accident to generate customers for Karns & Karns, including the Plaintiff.

7

42. Karns & Karns was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

43. To do so, it hired NexLevel Direct to orchestrate an *en masse* telemarketing campaign.

44. It also hired Accident to vet the leads originated by NexLevel Direct's cold calls and handle the client intake and send retainer agreements to consumers contacted by NexLevel's illegal telemarketing.

45. Karns & Karns controlled the day-to-day activities of NexLevel and Accident by providing the specific criteria for the leads it would accept and required its vendors, including NexLevel and Accident, to adhere to those criteria.

46. Karns & Karns would not compensate NexLevel and Accident for a call it made unless the leads met the criteria.

47. For example, Karns & Karns instructed NexLevel and Accident to ask potential customers if they had been in an auto accident, if the police attended the scene, or if they already had a lawyer.

48. As such, Karns & Karns controlled the content of NexLevel and Accidents' telemarketing.

49. Finally, Karns & Karns could have terminated NexLevel and Accident

50. It did not.

51. By virtue of identifying the leads that they would accept, Karns & Karns directed the content of the communications that NexLevel and Accident would use in their calling.

52. A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the National Do Not Call Registry.

8

53. Karns & Karns hired NexLevel and Accident without a proper investigation and did not terminate them when they were informed of their illegal calling conduct.

54. As such, they knowingly ratified NexLevel and Accidents' conduct.

55. Karns & Karns also ratified NexLevel and Accidents' conduct because, with the ability to know that the number they called was on the National Do Not Call Registry, they accepted the Plaintiff's lead.

56. Karns & Karns accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her.

57. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

58. Plaintiff's privacy has been violated by the above-described telemarketing calls.

59. Plaintiff never provided her consent or requested these calls.

60. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V. CLASS ACTION ALLEGATIONS

61. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of NexLevel Direct, Karns & Karns, or Accident, LLC, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Texas Business and Commerce Code Class**: All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of NexLevel Direct, Karns & Karns, or Accident, LLC, (2) at any time during which NexLevel Direct, Karns & Karns, or Accident, LLC were not registered as telephone solicitors with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

62. Excluded from the Classes are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

63. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

64. The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

65. Individual joinder of these persons is impracticable.

66. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

67. Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

10

68. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

69. This class action complaint seeks injunctive relief and money damages.

70. There are numerous questions of law and fact common to Plaintiffs and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a. Whether Karns & Karns is vicariously liable for the actions of NexLevel Direct LLC and Accident, LLC, and the corresponding liability as between NexLevel Direct LLC and Accident, LLC;

    b. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    c. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

    d. whether Defendants made telephone solicitations to members of the Texas Business and Commerce Code class without the required registration; and

    e. whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

71. Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

72. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

73. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

74. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

75. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other

persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

76. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

77. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

78. Defendants' violations were negligent, willful, or knowing.

79. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

80. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Texas Business and Commerce Code
### Violations of Texas Business and Commerce Code § 302.101
### (On Behalf of Plaintiff and the Texas Business and Commerce Code Class)

81. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

82. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

83. Defendants' violations were negligent, willful, or knowing.

84. As a result of Defendants', and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Classes of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this November 14, 2023.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*